## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

HAROLD M. HOFFMAN, ESQ.
Attorney ID No. 006531984
240 Grand Avenue
Englewood, NJ  07631
(201) 410-8223
*Attorney for Plaintiff and the Putative Class*

| | |
|---|---|
| **BRIAN KEEGAN**, individually and on behalf of those similarly situated,<br><br>      Plaintiff,<br><br>  -against-<br><br>**GURKAN DEMIR, SEBNEM GULER DEMIR, and ATA INTERNATIONAL, INC.,**<br><br>      Defendants. | **Case Number: 24-cv- _____( )**<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

## <u>OVERVIEW</u>

1.  By the instant complaint, Plaintiff brings claims on his own behalf and on behalf of those similarly situated (the "Class"), to redress nationwide criminality and injury deliberately and knowingly inflicted by Defendants on the United States consumer public through the advertisement, marketing, distribution and sale a product called ***Ryder XL*** whose ingredient list is deliberately falsified by Defendants to conceal that the product is covertly adulterated with two, separate pharmaceuticals which may

1

be lawfully administered only by prescription and under the supervision of a physician. Defendants are drug dealers who have introduced misbranded drugs into interstate commerce with intent to defraud and to mislead, all in violation of federal criminal statutes. Plaintiff seeks both injunctive and legal relief to remediate Defendants' ongoing criminality, as well as the injury they have inflicted on the U.S. consumer public.

2.      Ryder XL is represented by Defendants, in writing on the product label itself, to be an "All Natural" product intended to improve "Male Performance." The product label states that Ryder XL will "Rev Up Your [Sexual] Performance Naturally;" that it will "Take your partner to new levels of [sexual] satisfaction" and, that it will make the user's penis "Feel Larger & Fuller." On Defendants' web page, RYDER XL is described as a "Premium Male Enhancement Product, that Reliably Delivers results, Every Time – Guaranteed!" Thus, it is quite plain that Ryder XL is represented to be efficacious for erectile dysfunction ("ED").

3.      The product label, under the heading "Supplement Facts," states that Ryder XL is a wholly natural product consisting of a proprietary blend of herbal ingredients, including garlic and mushroom extracts.

4.      Defendants' claim, on the product label, that Ryder XL contains only herbal ingredients is a deliberate lie. Laboratory testing of Ryder XL discloses

2

that it is adulterated with both Sildenafil, the PDE5 inhibitor in the well known

pharmaceutical *Viagra,* as well as Tadalafil, the PDE5 inhibitor in the well known

pharmaceutical *Cialis.* PDE5 inhibitors, available in the United States by prescription

only, block the PDE5 enzyme to prevent it from working. This inhibition relaxes the

blood vessels and increases blood flow. People take PDE5 inhibitors, under the

supervision of a physician and, as noted, by prescription only, to treat ED.

5.     Defendants' deliberate lie concerning the true ingredients in their product

is concocted and knowingly employed by Defendants falsely to suggest to the U.S.

consumer public that Ryder XL can achieve positive results for those suffering from ED

without the need for consultation with a physician, without disclosure of their ED

situation to a third-party (which can be embarrassing to many men), without

prescription, and without attendant purchase and consumption of a pharmaceutical.

6.     Defendants's deliberate lie as to the true ingredients of Ryder XL is

also intended dangerously to dupe men suffering from various medical conditions that

forbid them from consuming PDE5 inhibitors into thinking that Ryder XL delivers

results with only natural ingredients, and without the need for a recognized,

pharmaceutical ingredient.

7.     Defendants are well aware that Ryder XL is adulterated with both

Sildenafil and Tadalafil, PDE5 inhibitors available only under the supervision of a physician and by prescription only. In truth and in fact, the individual Defendants:

● Personally dominated, controlled and managed the marketing and sale of Ryder XL, including arranging for the adulteration of Ryder XL with Sildenafil and Tadalafil.

● Personally managed, directed and controlled the scheme whereby Ryder XL was falsely represented and labeled, in writing, to be a wholly natural product;

● Personally exercised total and complete operational control and decision-making power, including product origination and development, marketing, sales, promotion, and covert adulteration with Sildenafil and Tadalafil; and,

● Personally managed and controlled the fraudulent distribution and sale of the adulterated Ryder XL product.

8.      Defendants' conscious, deliberate failure and refusal to disclose that Ryder XL is adulterated with a pharmaceutical puts the health of the U.S. consumer public at risk.

9.      Sildenafil and Tadalafil, the undisclosed pharmaceuticals in Ryder XL, are in a class of pharmaceuticals called phosphodiesterase ("PDE") inhibitors. As noted above, PDE inhibitors work to treat erectile dysfunction by blocking a specific enzyme in the blood vessels. This allows blood vessels to relax, resulting in increased blood flow

4

to the penis. This increased blood flow can cause an erection. But, as noted, Sildenafil and Tadalafil are pharmaceuticals available in the United States only under the supervision of a physician, by prescription only.

10.     Defendants' marketing of a purportedly natural product which is covertly adulterated with a controlled pharmaceutical puts the U.S. consumer public at risk and violates federal criminal statutes.

11.     Defendants also deliberately lie about the Ryder XL product when they represent in writing, on the product label, that Ryder XL is manufactured in the "USA at a GMP certified Facility." In truth and in fact, Ryder XL is believed to be formulated in Malaysia.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2) which provides for the original jurisdiction of the federal court in any class action in which any member of the Class is a citizen of a state different from any Defendants, and in which the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.

13.     Plaintiff alleges that the legal and equitable claims of individual Class members in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, and that the total number of members of the proposed Class is greater than

100, as required by 28 U.S.C. § 1332(d)(2), (5).  Further, as set forth below, Plaintiff is a citizen of a state different from the Defendants.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the Plaintiff resides in this District, and a substantial part of the events, acts, transactions and omissions giving rise to the claims asserted herein occurred in this District.

## THE PARTIES

15.     At all times relevant, Plaintiff Brian Keegan was a citizen of the State of New Jersey with a place of residence in Bergen County, New Jersey.  Plaintiff suffers from high blood pressure and high blood sugar and consumes medication on a daily basis, prescribed by his physician, for these conditions. Plaintiff's medical conditions prohibits him from ingesting Sildenafil and/or Tadalafil for ED. Accordingly, in May of 2024, Plaintiff purchased Ryder XL in reliance on the claim that it contained only natural ingredients.  Plaintiff paid $41.95 for the Ryder XL product.  Upon ingesting Ryder XL, Plaintiff experienced headache, dizziness, and blurred vision.

16.     At all times relevant, Defendant Gurkan Demir was a resident of the State of California, County of Orange.  Defendant Gurkan Demir is the Secretary and Chief Financial Officer of co-Defendant ATA International Inc. As noted above, Defendant Gurkan Demir, along with co-Defendant Sebnem Guler Demir, personally dominated, controlled and managed the marketing and sale of Ryder XL, including arranging for

6

the adulteration of Ryder XL with Sildenafil and Tadalafil; personally managed, directed and controlled the scheme whereby Ryder XL was falsely represented and labeled, in writing, to be a wholly natural product; personally exercised total and complete operational control and decision-making power, including product origination and development, marketing, sales, promotion, and covert adulteration with Sildenafil and Tadalafil; and, personally managed and controlled the fraudulent distribution and sale of the adulterated Ryder XL product.

17.     At all times relevant, Defendant Sebnem Guler Demir was a resident of the State of California, County of Orange.  Defendant Sebnem Guler Demir is the Chief Executive Officer of co-Defendant ATA International Inc. As noted above, Defendant Sebnem Guler Demir, along with co-Defendant Gurkan Demir, personally dominated, controlled and managed the marketing and sale of Ryder XL, including arranging for the adulteration of Ryder XL with Sildenafil and Tadalafil; personally managed, directed and controlled the scheme whereby Ryder XL was falsely represented and labeled, in writing, to be a wholly natural product; personally exercised total and complete operational control and decision-making power, including product origination and development, marketing, sales, promotion, and covert adulteration with Sildenafil and Tadalafil; and, personally managed and controlled the fraudulent distribution and sale of the adulterated Ryder XL product.

7

18.     Defendant ATA International, Inc. ("ATA") is a corporation organized and existing pursuant to the laws of the State of California, with its corporate headquarters located in Orange County, California. ATA, under the direction and control of the individual Defendants, and utilizing the pseudonym "TRAXXTONE," marketed and sold the Ryder XL product on numerous consumer platforms including but not limited to eBay.

19.     Defendants advertised, marketed, distributed and sold Ryder XL in commerce throughout the United States, including but not limited to the State of New Jersey, where Plaintiff resides.

## The Ryder XL Product

20.     According to the Ryder XL label, the product, in capsule form, contains only natural, herbal constituent ingredients.  In reality however, Ryder XL is not a natural, herbal blend as claimed. According to sophisticated laboratory analysis conducted in July 2024 by Flora Research Laboratories, a highly prominent U.S. testing laboratory registered and inspected by the U.S. Drug Enforcement Administration, Ryder XL is covertly adulterated with two separate pharmaceuticals: Sildenafil and Tadalafil. The dangerous presence – even to healthy individuals – of doses of two controlled substances is not disclosed on the product label. Defendants deliberately and knowingly conceal the substantial presence of Sildenafil and Tadalafil in Ryder XL

because Sildenafil may not be sold and/or lawfully obtained by a U.S. consumer without medical supervision and a prescription.

21.     As a result, Defendants are knowingly, albeit covertly, dosing U.S. consumers with un-prescribed pharmaceuticals. And, Defendants are dosing U.S. consumers with both Sildenafil and Tadalafil without any intervention, or oversight, by a physician.  Even worse, Ryder XL is adulterated with 33.8 mg of tadalafil (Cialis) per capsule. The maximum dose of Cialis medically recommended for ED is 20 mg per day. Thus, each of the capsules sold by Defendants, quite dangerously, almost doubles the maximum dose available by prescription.

22.     Defendants' claims, promises and product labeling with respect to the constituent ingredients in Ryder XL were calculated and designed to lead Plaintiff and members of the putative class to believe that Ryder XL was a natural, herbal remedy for ED.  Plaintiff and members of the putative class relied on Defendants's deceitful claims and purchased and consumed the product based on said deceitful claims.

23.     Sildenafil and Tadalafil, as noted, are pharmaceuticals available only at the direction, supervision, and prescription of a physician, after full medical consultation and examination, as they are potentially dangerous to the health of U.S. consumers if secured and ingested without medical authorization and clearance. Indeed, FDA approval of these pharmaceuticals is specifically limited to their use under

9

the supervision of a licensed medical professional.  Due to toxicity and other potentially

harmful effects – including life-threatening drops in blood pressure, loss of vision, and

loss of hearing – Sildenafil and Tadalafil are not safe for use except under the

supervision of a medical practitioner.  Yet, Defendants do not disclose that consumers

of the Ryder XL product are ingesting Sildenafil and huge doses of Tadalafil.

24.     Members of the class, including Plaintiff, were deceived by Defendants'

claims and misrepresentations concerning Ryder XL's purportedly natural, herbal

constituents, and paid a purchase price for the product based on said false claims by

Defendants.

## CLASS ALLEGATIONS

25.     Plaintiff brings this suit individually and as a class action pursuant to Fed.

R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).  Subject to additional information obtained

through further investigation and discovery, the definition of the Class may be

expanded or narrowed. The proposed Class consists of all United States residents who

purchased **Ryder XL** during the six (6) year period preceding the filing of this suit.

26.     This action has been brought and may properly be maintained as a class

action pursuant to Fed. R. Civ. P. 23.

27.     **Numerosity:** The members of the Class are so numerous that joinder of

all members is impracticable. The Class is comprised of consumers throughout the United States who purchased Ryder XL.

28.    **Commonality:** Common questions of law and fact exist as to all members of the Class. These common questions predominate over the questions affecting only individual Class members, and include:

(a) Whether Defendants' affirmative, material misrepresentations and concealment constitute common law fraud and/or a violation of the New Jersey *Consumer Fraud Act*;

(b) Whether Defendants deliberately concealed the adulteration of Ryder XL with a pharmaceutical; and,

© the appropriate measure of damages suffered by Plaintiff and members of the Class.

29.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' illegal and shockingly deceitful conduct.  Plaintiff, like other members of the Class, purchased and consumed Ryder XL, after exposure to the same misrepresentations and/or concealment of its adulteration with pharmaceuticals requiring a prescription. Plaintiff is advancing claims and legal theories typical to the Class.

30.    **Adequacy:** Plaintiff's claims are made in a representative capacity on behalf of all members of the Class.  Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses.

11

31.     Plaintiff is similarly situated in interest to all members of the proposed Class and is committed to the vigorous prosecution of this action.  Accordingly, Plaintiff is an adequate representative of the proposed Class and will fairly and adequately protect the interests of the Class. Plaintiff may identify and propose additional class representatives with the filing of Plaintiff's motion for class certification.

32.     Plaintiff's counsel is an experienced attorney who has previously been appointed class counsel for certified classes of consumers by both state and federal courts in New Jersey and New York.

33.     This suit may be maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants has acted, and/or has refused to act, on grounds generally applicable to the Class, thereby making final relief appropriate.

34.     Plaintiff also seeks injunctive relief requiring Defendants to: (I) discontinue advertising, marketing, packaging, distributing, selling and otherwise representing Ryder XL as a natural herbal product; (ii) surrender their existing stock of the product to the U.S. Food and Drug Administration; (iii) undertake a public information campaign to Class members of their false and deceitful prior practices; and (iv) correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of Ryder XL, including without limitation, the

placement of corrective advertising and providing written notice to the U.S. consumer public.

35.    **Superiority**: In addition, this suit may be maintained as a class action under Fed. R. Civ. P. 23(b)(3)  because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The claims asserted herein are applicable to all consumers throughout the United States who purchased Ryder XL. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class, acting individually, effectively and cost-efficiently to redress Defendants's wrongful conduct. Individual litigation would enhance delay and expense to all parties.  The class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
### [Common Law Fraud]

36.    Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

37.     Defendants made false statements of material fact which they

knew to be false at the time they were made. The false statements made by Defendants were made in writing on the Ryder XL product label: that the product was comprised of solely natural ingredients, and that it was manufactured in the U.S., at a certified facility. Defendants knew these statements to be false. Defendants knew that Ryder XL was adulterated with Sildenafil and Tadalafil, PDE5 inhibitors available by prescription only. Defendants further knew that Ryder XL was not manufactured in the USA at a GMP certified facility, as represented on the product label.

38.     Defendants made the aforesaid materially false statements for the purpose of inducing consumers to act in reliance thereon. Innocent consumers acted in reasonable reliance on the accuracy of Defendants' representation that Ryder XL was comprised of only natural ingredients and, as a result, suffered damages.

39.     Indeed, Defendants fully intended falsely to represent Ryder XL as a natural, herbal product and to conceal the fact that it was adulterated with a pharmaceutical. Moreover, Defendants fully intended that consumers rely on the deliberate falsity and material incompleteness of Ryder XL's ingredient list stated on the product label.  As a result, Defendants induced and achieved consumer purchases of Ryder XL via deceit.

40.     Plaintiff and the putative class of consumers reasonably relied on

Defendants' lies and deceit as to the constituent ingredients of Ryder XL. There was

absolutely no reason to doubt the claim that Ryder XL was free of controlled

pharmaceuticals.  Indeed, there was no reason to doubt the very reasonable conclusion

that a merchant would never put a consumer's health at risk by failing to disclose that a

product that was to be ingested by consumers contained undisclosed, potentially

dangerous pharmaceutical ingredients.

41.     Defendants' false labeling of Ryder XL and their false representations

as to the true constituent ingredients of Ryder XL, as well as their conscious, deliberate

failure to disclose that Ryder XL was adulterated with a pharmaceutical, constitute

highly material misrepresentations and concealment of a highly material facts.

42.     Defendants knew full well that Ryder XL's ingredient list was

materially false and that Ryder XL was adulterated with Sildenafil and Tadalafil. For

example, Defendants' product label warns consumers, *inter alia*, to not consume "more

than 1 capsule in twenty-four (24) hour period," and it also warns consumers to

"consult your physician or health care provider prior to using this product" These

advisements and warnings evidence Defendants' awareness that they were marketing a

pharmaceutical, and not an herbal product. Indeed, the aforesaid advisement and

warning mirrors information provided to consumers of the pharmaceuticals Sildenafil

and Tadalafil under a physician's supervision. Such advisements and warnings have no

application whatsoever to a truly natural/herbal product. Defendants' claim of selling an herbal product was a conscious lie.

43.     Defendants fully intended falsely to represent Ryder XL as a natural, herbal product and to conceal the fact that it was adulterated with pharmaceuticals.

44.     Defendants fully intended that consumers rely on the deliberate falsity and material incompleteness of Ryder XL's ingredient list.

45.     Defendants further fully intended to conceal the adulteration of Ryder XL from state and federal regulatory and law enforcement authorities.

46.     Plaintiff and the putative class of consumers reasonably relied on Defendants's lies and deceit as to the constituents of Ryder XL.

47.     Plaintiff and the putative class of consumers were damaged by being subjected to non-prescribed, potentially dangerous pharmaceuticals, as well as by the taking of funds expended to purchase a purportedly natural product marketed and sold based on lies, deceit and material concealment of Ryder XL's true constituent ingredients.

**WHEREFORE**, plaintiff, individually and on behalf of the class, demands judgment against the Defendants for such damages as are permitted by law, including but not limited to punitive damages, together with pre-judgment and post-judgment

interest, fees, costs, attorney's fees, and such other and further relief, including but not limited to injunctive relief, as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### [New Jersey Consumer Fraud Act]

48.     Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

49.     At all relevant times, plaintiff was and is a consumer, with a residence in the State of New Jersey, County of Bergen.

50.     At all relevant times, Defendants, and each of them, constituted a "person" as defined in the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-1(d).

51.     In advertising, marketing, distributing and selling Ryder XL to the U.S. consumer public as a natural, herbal product when, in truth, it is knowingly adulterated with undisclosed pharmaceuticals, Defendants violated the New Jersey *Consumer Fraud Act*.

52.     Based on Defendants' illicit advertising and marketing of Ryder XL, Defendants are believed to have sold substantial quantities of the product to consumers throughout the nation, including the State of New Jersey.

53.     Defendants' blatant misrepresentations and concealment regarding the true nature and ingredients of Ryder XL, were designed to and did lead class members to believe that Ryder XL was a natural, herbal product, as opposed to an unlawfully

17

sold pharmaceutical. Plaintiff and members of the Class relied on Defendants' misrepresentations, concealment of pharmaceutical adulteration, and would not have purchased and/or paid **any** purchase price for Ryder XL but for Defendants' irresponsibility, false claims, misrepresentations and concealment.

54.     Plaintiff brings this suit to recover funds taken by Defendants as a consequence of their material deception of consumers as to the true pharmaceutical nature of Ryder XL, as well as their outrageous disregard for the health of consumers.

55.     The affirmative claims, concealments, promises and representations made by Defendants in connection with the marketing, advertisement, distribution and sale of Ryder XL, as aforesaid, are violative of the New Jersey *Consumer Fraud Act*.

56.     Members of the putative class are purchasers of Ryder XL and, prior to purchasing it, saw, read, heard and relied upon Defendants' materially false product advertisements, product labeling, promises, claims and representations, as aforesaid.

57.     Plaintiff and members of the class, prior to purchasing and consuming Ryder XL, saw, read and/or heard Defendants' false promises, and deceitful product labeling, and made an out of pocket payment to Defendants in response thereto and in reliance thereon.

58.     The very purpose of the New Jersey Consumer Fraud Act is to protect

consumers, such as the putative class members at bar, from being victimized by false promises, claims and concealment with respect to the nature and constituents of the product being purchased.

59.     Defendants materially misrepresented Ryder XL: Ryder XL is not a natural, herbal product; it is a non-prescribed pharmaceutical which puts consumers' health at risk.  Plaintiff and members of the class paid for a deliberately, wholly misrepresented product.

60.     U.S. consumers made purchasing decisions and did, in fact, make purchases from Defendants based upon and in reliance on Defendants' specific claims and representations as to Ryder XL's natural, herbal composition.

61.     Defendants affirmatively and deliberately misrepresented the very nature of Ryder XL, and could not have cared less that the U.S. consumer public was being drugged.

62.     The affirmative claims, promises and representations made by Defendants as to Ryder XL are dangerously false and fabricated.

63.     Defendants' labeling promises and representations concerning Ryder XL are wholly false and constitute a deception; a misrepresentation; an unconscionable trade practice; a sharp and deceitful marketplace practice, a violation of federal law, and constitute a dangerously false promise which puts the health of consumers at risk.

64.     Defendants' labeling promises and representations concerning Ryder XL result in nationwide consumers who purchased the product being subjected to misrepresentation, false promise, fraud, deceit, and life-threatening trickery.

65.     Defendants have made material, affirmative misrepresentations in connection with the sale, marketing and/or advertisement of Ryder XL, and to induce its purchase by nationwide consumers.

66.     Members of the putative class suffered ascertainable loss in the form of, without limitation, actual out of pocket payment and expenditure to acquire a potentially dangerous, non-prescribed medication as a result of Defendants' unlawful conduct.  Members of the putative class paid hard earned money to acquire from Defendants a natural, herbal product and instead received from Defendants non-prescribed, illegal pharmaceuticals.

67.     Defendants' product failed to measure up to the consumers' reasonable expectations based on the false representations and/or disregard of consumer health.  U.S. consumers intended to purchase a natural, herbal product. Instead, they received  potentially dangerous, non-prescribed pharmaceuticals. Thus, purchasers of Ryder XL were injured and suffered loss.

68.     For their money, members of the class received something dramatically

different from what they reasonably expected in view of Defendants' representations and product labeling. As a result, consumers suffered ascertainable loss.

69.     Defendants marketed and sold Ryder XL - and consumers including Plaintiff purchased the product - as a result of, in reliance on Defendants' deceitful promise that Ryder XL was a natural herbal product, not illegally-delivered drugs. Thus, there is a causal relationship between the Defendants' misrepresentations and concealment, and the loss suffered by plaintiff and class members.

70.     Defendants' abject disregard, lies and concealment as to the covert adulteration of Ryder XL constitute material misrepresentations under the New Jersey *Consumer Fraud Act*. Defendants' outrageous conduct violates federal law and thus stands outside the norm of reasonable business practice.

71.     Defendants' Ryder XL ingredient list, written on the product itself and containing a highly material lie, to wit, failure to disclose adulteration with pharmaceuticals constitutes a deceptive act and practice in connection with a consumer transaction resulting in the sale of Defendants' product.

72.     Plaintiff and the putative class of consumer-purchasers of Ryder XL suffered damages caused directly by Defendants's deceptive act and abject irresponsibility.  These damages include being unknowingly drugged by Defendants; being tricked into unknowingly ingesting a pharmaceutical; and, being tricked into

expending funds to purchase a purportedly natural product based on a material, deliberate lie as to its constituent ingredients.

73.   Defendants' conduct constitutes an unconscionable commercial practice in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

74.   As a proximate result of Defendants' conduct, plaintiff and members of the class were damaged and suffered loss.

**WHEREFORE**, plaintiff, individually and in behalf of the class, demands judgment against the Defendants for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief, including but not limited to injunctive relief, as the Court deems just and proper.

## JURY DEMAND

Demand is hereby made for trial by jury as to all issues.

/s/ **HAROLD M. HOFFMAN, ESQ.**
240 Grand Avenue
Englewood, NJ  07631
(201) 569-0086
*Attorney for Plaintiff and the Putative Class*

Dated: July 31, 2024